IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RODNEY D. TOW,** Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| Vs. | § | Civil Action No.: 4:16-cv-643 |
| | § | |
| **ORGANO GOLD INT'L, INC.,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, ORGANO GOLD INT'L, INC., ORGANO GOLD ENTERPRISES, INC., AND HOLTON BUGGS
& MEMORANDUM IN SUPPORT THEREOF**

Seth A. Nichamoff
**NICHAMOFF LAW, P.C.**
2444 Times Boulevard, Suite 270
Houston, Texas 77005
(713) 503-6706 Telephone
(713) 360-7497 Facsimile
seth@nichamofflaw.com

-and-

Jamie King
**JAMIE KING, P.C.**
P.O. Box 5757
Kingwood, Texas 77325
(713) 521-6558 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

**ATTORNEYS FOR DEFENDANTS ORGANO GOLD INT'L, INC., ORGANO GOLD ENTERPRISES, INC. AND HOLTON BUGGS**

i

## TABLE OF CONTENTS

I.  Nature & Stage of Proceeding ................................................................................ 1

II.  Statement of Issues ............................................................................................... 2

III.  Summary of the Argument .................................................................................... 2

IV.  Summary Judgment Facts ..................................................................................... 4

  A.  The Trustee Sold the Trade Secret & Breach of Contract Claims to SRD ...................... 4

  B.  AmeriSciences' Business .................................................................................... 5

  C.  Organo Gold's Business ..................................................................................... 6

  D.  Mr. Buggs' Business .......................................................................................... 7

  E.  Failure of AmeriSciences ................................................................................... 7

  F.  Introduction of AmeriSciences Distributors to Organo Gold ................................... 7

  G.  Buggs' Unlucky Receipt of a Distributor List ...................................................... 8

  H.  Public Disclosure of "Trade Secrets" ................................................................. 8

  I.  Downline Genealogy Constitutes a Distributor's Contacts ..................................... 10

  J.  Disclosures of Distributor Contact Information ................................................... 10

  K.  Former Distributors of AmeriSciences Join Organo Gold ...................................... 10

  L.  Contract to Purchase Software .......................................................................... 11

V.  Argument & Authority ......................................................................................... 11

  A.  Summary Judgment Standard ............................................................................ 11

  B.  Was There a Trade Secret? ............................................................................... 12

  C.  No Proof of Use .............................................................................................. 15

  D.  No Misappropriation, Fraudulent Transfer or Conversion – OGI, OGE and Mr. Buggs Did Nothing Wrong ....................................................................................................... 15

  E.  No Avoidable Transfer of Distributor "Network," List, Software, License or Other Assets ........ 16

  F.  The Trustee Sold His Claims to SRD .................................................................. 18

  G.  No Tortious Interference with Distributor Contracts ............................................ 18

  H.  No Aiding & Abetting Breach of Fiduciary Duty ................................................. 19

VI.  Conclusion ......................................................................................................... 20

VII.  Prayer ............................................................................................................... 20

Certificate of Service .................................................................................................. 22

<u>INDEX OF AUTHORITIES</u>

## Cases

*A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 901-02 (S.D. Tex. 2015)............................... 14

*Aerospace America v. Abatement Technologies*, 738 F.Supp. 1061, 1071 (W.D. Mich. 1990)... 13

*American Derringer Corp. v. Bond*, 924 S.W.2d 773, 776-78 (Tex.App.—Waco 1996, no writ) ...................................................................................................................................... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) .................................................. 11, 12

*Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex.1998)............... 18

*Astoria Indus. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex.App.—Fort Worth 2007, pet. denied)... 16

*Atlantic Richfield Co. v. Misty Prods.*, 820 S.W.2d 414, 422 (Tex.App.—Houston [14th Dist.] 1991, writ denied). ...................................................................................................... 15

*Auto Wax Co. v. Byrd*, 599 S.W.2d 110, 112-13 (Tex. App.—Dallas 1980, no writ)................. 14

*Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex.1992)....................................................... 16

*Begier v. Internal Revenue Service*, 496 U.S. 53, 59 (1990) ...................................................... 17

*C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 787-88 (Tex.App.—Houston [1st Dist.] 2004, no pet.)................................................................................................................. 16

*Carson Prods. Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979)............................................. 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .............................................................. 2, 11

*Cox Tex. Newspapers, L.P. v. Wooten*, 59 S.W.3d 717, 722 (Tex. App.--Austin 2001, pet. denied)........................................................................................................................... 19

*Frost Nat'l Bank v. Alamo Nat'l Bank*, 421 S.W.2d 153, 158 (Tex.App.—San Antonio 1967, writ ref'd n.r.e.).................................................................................................................. 19

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ...................... 16

*Hyde Corp. v. Huffines*, 314 S.W.2d 763, 768-69 (Tex.1958) .................................................... 15

*In re 3dfx Interactive, Inc.*, 389 B.R. 842, 875-80 (N.D. Cal. 2008)........................................... 17

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) ............................................................................ 14

*In re Jeffrey Bigelow Design Group*, 956 F.2d 479, 485 (4th Cir. 1992) ...................................... 17

*In re M. Silverman Laces, Inc.*, 404 B.R. 345, 360-61 (S.D.N.Y. 2009) ...................................... 17

*In re Union Pac. R.R.*, 294 S.W.3d 589, 592 (Tex. 2009) ...................................... 13, 14

*Kline v. O'Quinn*, 874 S.W.2d 776, 786-87 (Tex.App.—Houston [14th Dist.] 1994, writ denied) ...................................................................................................................................... 19

*KTRK TV, Inc. v. Fowkes*, 981 S.W.2d 779, 790 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) ...................................................................................................................................... 18

*Metallurgical Indus. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986) ........................... 13, 16

*Philip H. Hunke, D.D.S., M.S.D., Inc. v. Wilcox*, 815 S.W.2d 855, 858 (Tex. App.—Corpus Christi 1991, writ denied) ...................................................................................................... 14

*Polar Molecular Corp. v. Amway Corp.*, 1.07-CV-460, 2008 WL 907472 (W.D. Mich. Mar. 31, 2008) ................................................................................................................................. 14

*Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) ................................ 11

*Sikes v. McGraw-Edison Co.*, 665 F.2d 731, 734 (5th Cir.1982). .................................................. 13

*Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied) ....... 19

*Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex.1992) .............. 18

*Stemtech Int'l, Inc. v. Drapeau*, No. 1:16-cv-918-R (W.D. Tex. Dec. 27, 2016) ........................ 12

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22-23 (Tex.App.—Houston [1st Dist.] 1998, no pet.). ......................................................................................... 13

*Turner v. KTRK TV, Inc.*, 38 S.W.3d 103 (Tex.2000) ................................................................. 19

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962 ............................................................. 11

*Waste Mgmt. v. Abbott*, 406 S.W.3d 626, 636 (Tex. App.—Eastland 2013, pet. denied) ........... 13

*Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 875 (5th Cir. 2013) ................................. 13, 14

**Rules**

Rule 56 of the Federal Rules of Civil Procedure .......................................................................... 1

Rule 56(c) of the Federal Rules of Civil Procedure .................................................................... 11

**Other Authorities**

Restatement (3d) of Unfair Competition §§40(b)(2), 43 & cmt. c. ............................................... 16

Restatement (3d) of Unfair Competition §40(b)(3) ...................................................................... 16

Restatement (3d) of Unfair Competition §40(b)(3), (b)(4) ........................................................... 16

Restatement of Torts §757(d) & cmt. *l* ........................................................................................ 16

COME NOW, Defendants, Organo Gold Int'l, Inc., Organo Gold Enterprises, Inc., and Holton Buggs, by and through their attorneys, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move for summary judgment against Plaintiff, Rodney D. Tow, Chapter 7 Trustee, and respectfully show as follows:

## I.  NATURE & STAGE OF PROCEEDING

Plaintiff, Rodney D. Tow, Chapter 7 Trustee, complains of Defendants, Organo Gold Int'l, Inc. ("OGI"), Organo Gold Enterprises, Inc. ("OGE") and Mr. Buggs, for trade secret misappropriation, conversion, tortious interference with contract, aiding and abetting breach of fiduciary duty, unjust enrichment, fraudulent transfer (actual and constructive) under 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfers Act, and avoidable transfers under 11 U.S.C. § 550.

This case concerns a list of distributors of a defunct and bankrupt MLM company named AmeriSciences, L.P. ("AmeriSciences").  Upon default on its obligations to distributors, the president of AmeriSciences gathered high-level distributors, terminated their contracts, and directed them to a new business opportunity with Organo Gold, which is also an MLM company.

The president and high-level distributors separately transferred lists of distributors to Organo Gold so, if former distributors of AmeriSciences wanted to contract with Organo Gold, they could "click" a button on Organo Gold's website agreeing to Organo Gold's distributor contracts for non-exclusive distribution rights to Organo Gold's products.

OGI, OGE, and Mr. Buggs did nothing wrong in receiving the list of distributors, and the Trustee's claims fail for various reasons set forth below.

1

The discovery period expired on September 15, 2017, and the dispositive motions deadline is September 30, 2017 (noting that the deadline fell on a Saturday).  Docket call is set for January 26, 2018.

## II.  STATEMENT OF ISSUES

Defending themselves against 11 separate causes of action, OGI, OGE, and Mr. Buggs distill their summary judgment argument to 6 issues:

1. Whether the Trustee owns claims other than those under Chapter 5 of the Bankruptcy Code.  *De novo* review.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2. Whether the list is a "trade secret."  *De novo* review.  *Celotex Corp.*, 477 U.S. at 322.

3. Whether OGI, OGE and Mr. Buggs misappropriated, converted, or fraudulently transferred a "trade secret," or otherwise unjustly enriched themselves.  *De novo* review.  *Celotex Corp.*, 477 U.S. at 322

4. Whether AmeriSciences "transferred" property within the meaning of Chapter 5 of the Bankruptcy Code and law. *De novo* review.  *Celotex Corp.*, 477 U.S. at 322.

5. Whether OGI, OGE and Mr. Buggs tortiously interfered with contracts.  *De novo* review.  *Celotex Corp.*, 477 U.S. at 322.

6. Whether OGI, OGE and Mr. Buggs "knowingly participated" in a breach of fiduciary duty.  *De novo* review.  *Celotex Corp.*, 477 U.S. at 322.

## III.  SUMMARY OF THE ARGUMENT

The Trustee sold all claims but those arising under Chapter 5 of the Bankruptcy Code to Supplement Research and Development, L.L.C. ("SRD").  The Trustee will argue that he did not sell any of his claims and that the parties did not intend to sell all claims.  However, the agreement is irrefutable; the Trustee does not own claims he asserts.

The Trustee's complaint centers on OGI, OGE, and Mr. Buggs' receipt of an April 19, 2012 AmeriSciences' e-mail attaching a list of AmeriSciences' distributors (the "distributor list").

2

The Trustee argues that the distributor list is a trade secret. Trustee seeks to avoid the April 19, 2012 transfer of the distributor list, alleging fraudulent transfer, conversion or a misappropriation, and asserts claims for tortious interference with contract and aiding and abetting breach of fiduciary duty, all arising from the e-mail.

The Trustee's trade secret claims fail because: (a) the distributor list constitutes distributors' general skills, knowledge, and experience; (b) distributors had unfettered access to the list; (c) prior to and after April 19, 2012, the distributors separately disclosed distributor information; and (d) there is no "transfer" of "property" that can be avoided.

The distributors separately directly transmitted the disputed information with the consent of AmeriSciences. Thus, OGI and OGE acquired the disputed information (trade secret or not) by proper means and used the information with consent.[1]

The Trustee also complains of OGI, OGE, and Mr. Buggs' receipt of a computer program licensed by OGE from AmeriSciences. OGE agreed to license the software for a $10,000.00 license fee, if it worked. But, the program never worked and OGE never paid $10,000.00 to AmeriSciences.

The Trustee alleges tortious interference with distributor agreements by OGI, OGE, and Mr. Buggs. However, AmeriSciences (a) defaulted on obligations to its distributors, (b) terminated their contracts, and (c) consented to all interactions.

Finally, the Trustee complains of OGI, OGE, and Mr. Buggs' aiding and abetting breaches of fiduciary duty. The Trustee's claim fails because the summary judgment evidence establishes that OGI, OGE, and Mr. Buggs engaged in conduct within their legal rights.

---

[1] Mr. Buggs is sued because of his being e-mailed a distributor list; he didn't use the list.

3

## IV.   SUMMARY JUDGMENT FACTS

### A.   *The Trustee Sold the Trade Secret & Breach of Contract Claims to SRD*

On May 9, 2013, Judge Letitia Paul entered an order[2] in Case No. 12-37545, *In Re: AmeriSciences, L.P.*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  The order approved the sale of all AmeriSciences' assets to SRD, save and except for claims under Chapter 5 of the Bankruptcy Code.  The terms of the approved sale follow:

> [SRD] offers to purchase [AmeriSciences'] General Intangibles and Intellectual Property…Except as provided below, the Assets do not include Chapter 5 causes of action or accounts receivable.

"General Intangibles and Intellectual Property" are defined in the order [Pg. 19] as follows:

> **"General Intangibles"** means all of Company's now owned and hereafter acquired, created or arising "general intangibles" (as defined in Article 9) of every kind and description, and including all… programs and software; licenses, permits, consents, and approvals of any governmental authorities or other persons… Intellectual Property, and to the extent not otherwise included as Intellectual Property…

> **"Intellectual Property"** means Core Intellectual Property, Other Intellectual Property and Intellectual Property Agreements.

> **"Core Intellectual Property"** means… copyrights… and all rights relating to any of the foregoing… and rights to sue for past, present or future violations or infringements of any of the foregoing…

> **"Intellectual Property Agreements"** means personal services contracts, employment contracts, confidentiality agreements and similar covenants and agreements, rights under agreements not to compete and similar covenants and agreements… relating to any of the foregoing or any Core Intellectual Property or any Other Intellectual Property, and any agreements, rights, options, or licenses to purchase or otherwise acquire or use or benefit from (or to sell or otherwise permit any other Person to acquire or use or benefit from) any Core Intellectual Property, any Other Intellectual Property or any other property within this definition of Intellectual Property Agreements.

---

[2] A true and correct copy of the May 9, 2013 Order in Case No. 12-37545 is attached as Exhibit A and incorporated by reference.

4

**"Other Intellectual Property"** means… trade secrets, know how, shop rights… distributorships, and customer lists… and all rights to sue for past, present or future violations or infringements of any of the foregoing…

B. *AmeriSciences' Business*

AmeriSciences started as a multilevel marketing company retailing products to medical professionals in 2001.  A multilevel marketing company contracts with distributors, who sell the company's products for compensation.  Distributors in turn attract other distributors, who in turn attract other distributors and so on.  The distributors replicate in a generational form, with products being retailed through the distributor generations. Montesinos Depo 21:7-22:21.[3]

AmeriSciences' distributor enters into distributor agreements with AmeriSciences. Montesinos Depo 75:12-76:13.

AmeriSciences grew to approximately 30 employees, with Barry Cocheu as the President and CEO of AmeriSciences, Louis Gallardo as Chairman, George Skirm as head of IT, and Carlos Montesinos as the Scientist and Director in charge of Product Development and Quality Assurance.  Montesinos Depo 24:5-25:1; 37:8-12; 38:1-13.

AmeriSciences focused on "high value, high dollar, highly successful business people." AmeriSciences' main products were OS2 and the AS10 family of products.  OS2 is an ocular support solution focused on dispensation by medical health professionals to their patients.  From 2000 to 2011, AmeriSciences main product was OS2.  Montesinos Depo 46:13-47:5; 52:17-54:11; 55:21-56:25; 59:21-60:12.

In 2011, AmeriSciences developed the AS10 family, which was focused on the multilevel marketing health supplement demographic.  Montesinos Depo 56:8-25; 60:24-61:8.

---

[3] A true and correct copy of the transcript of the deposition of Carlos Montesinos (Exhibits omitted) is attached as Exhibit B and incorporated by reference.

5

AmeriSciences collected "advances" or "investments" for its products. AmeriSciences distributors had "credit lines" with AmeriSciences for products that had not been supplied. Founding distributors of AmeriSciences had credit lines greater than $100,000. As of April 2012, AmeriSciences defaulted on those credit lines and stopped paying compensation to its distributors. Montesinos Depo 71:8-16; 108:22-109:3; 118:10-25.

Mr. Cocheu and Mr. Gallardo met with Mr. Buggs in late 2011 to discuss AmeriSciences' business model. In early January of 2012, Mr. Cocheu and Mr. Gallardo traveled to Las Vegas to attend an Organo Gold event. Buggs Depo 20:21-24; 48:17-49:9.[4]

After January 2012, Mr. Cocheu and Mr. Gallardo started talking about Organo Gold and entered into discussions for Organo Gold's purchase of AmeriSciences. In February 2012, after the discussions led nowhere, AmeriSciences decided to create a coffee product to directly compete with Organo Gold. Montesinos Depo 81:18-84:11.

C. *Organo Gold's Business*

Organo Gold is a multilevel marketing company selling coffee containing the ganoderma mushroom supplement. Organo Gold focuses on the "coffee experience" as much as the ganoderma mushroom health benefits. Montesinos Depo 49:6-50:3; 51:3-7.

Organo Gold's business and AmeriSciences' business were similar in that they were both multilevel marketing companies, but differed as to products, distributors, and markets. Organo Gold sold coffee with ganoderma extract, focusing on the "coffee experience," while AmeriSciences sold high value OS2 to medical professionals and AS10 family of supplements. Montesinos Depo 49:6-50:3; 51:3-7; 52:18-56:25.

---

[4] A true and correct copy of the transcript of the deposition of Holton Buggs, with certain Exhibits thereto, is attached as Exhibit C and incorporated by reference.

### D. *Mr. Buggs' Business*

At all material times, Mr. Buggs was a Vice-President of Organo Gold.  Mr. Buggs is not a distributor for Organo Gold.  He sells coffee through an entity named 3K Marketing, L.P., which is an Organo Gold Distributor.  Buggs Depo 8:5-21; 9:15-22; 12:22-13:5.

### E. *Failure of AmeriSciences*

In April 2012, AmeriSciences defaulted on its distributor credit lines and stopped paying compensation to its distributors.  Accordingly, in April 2012, Mr. Cocheu and Mr. Gallardo terminated AmeriSciences' agreements with its distributors so that they could join Organo Gold and attempt to recoup some of their losses.  Montesinos Depo 71:8-16; 72:14-19; 108:22-109:3; 118:10-25; 150:6-151:7; 156:19-157:22; 158:14-159:13; 160:15-17.

Some distributors were very unhappy with losing their investment and "credit lines" in AmeriSciences and being asked to sell coffee.  Montesinos Depo 71:8-16.

### F. *Introduction of AmeriSciences Distributors to Organo Gold*

On April 10, 2012, AmeriSciences distributors attended a meal with Mr. Buggs at a restaurant called Perry's Steakhouse to discuss a move by (former) AmeriSciences' distributors to Organo Gold.   The Perry's Steakhouse dinner included the (former) top distributors of AmeriSciences.  Following this meeting was a larger meeting on or about April 13, 2012.  Buggs Depo 21:18-25; 67:12-68:15; 70:7-19; 81:19-21; Montesinos Depo 144:13-18.

Eventually, AmeriSciences distributor lists were sent to Organo Gold without objection of the distributors so that, after their termination as AmeriSciences' distributors, they could go to the Organo Gold website and "click" "I agree to contract" and then become a distributor of Organo Gold.  The distributors would not become distributors of Organo Gold without "clicking" a button agreeing to a contract on Organo Gold's website.  Montesinos Depo 76:14-77:4; 150:12-151:1.

### G. Buggs' Unlucky Receipt of a Distributor List

On April 16, 2012, Mr. Cocheu e-mailed Ana Juricev, Mr. Buggs' assistant, a distributor list. Buggs Depo Ex. No. 29.  Mr. Cocheu copied Mr. Buggs on the e-mail and requested that Ms. Juricev forward the e-mail to Organo Gold and Organo Gold's third-party database administrator, Oliver Wang.  Buggs Depo Ex. No. 29.

On April 19, 2012, Mr. Cocheu sent another distributor list to Mr. Wang, and copied Mr. Buggs on the e-mail.  Buggs Depo Ex. No. 30.

Mr. Buggs testified that he didn't acquire a distributor list by receipt of an email.   Buggs Depo 98:25-99:20.

### H. Public Disclosure of "Trade Secrets"

AmeriSciences maintained a list of distributors.  Skirm Depo 19:1-15.[5]  Importantly, distributors were allowed "back-office" access to the list and could print off the list of their "downline" distributors.  Skirm Depo 19:18-24.   The "back-office" data available to the distributors included their "order history… commissions history, downline genealogy…" Skirm Depo 20:4-20.  A distributor could "click on a link and it would show you who your downline was and through Internet Explorer or any other web browser you used, you could just go and hit the print button and that would print off a paper copy."  Skirm Depo 20:21-21:1.

In fact, at all times, the distributors of AmeriSciences had full and unfettered access to names and contact information for all individuals in their "downline," including the ability to "cut and paste" that information and transfer it to another program.  Skirm Depo 143:6-24; 146:9-147:11; 157:21-158:4; 162:2-24.  Nothing prevented a distributor from "a simple copy and paste

---

[5] A true and correct copy of the transcript of the deposition of George Skirm, with certain Exhibits thereto, is attached as Exhibit D and incorporated by reference.

or through a button on the report, you could say, export to Excel or something like that to get that data saved to a thumb drive or something like that."  Skirm Depo 40:15-19.

AmeriSciences took no electronic measures to prevent the public disclosure of distributor names and contact information, despite the ability to do so.   Mr. Skirm, AmeriSciences' IT director, testified as follows:

> Q: Okay. And to that end, you did not employ any software or any devices to prevent people from seeing all their downline contact information and exporting it, correct?  Nothing prevented that?
>
> A: That is correct.  It was by design even.
>
> Q: Okay.  So you intended for someone at the base of the tree to know everybody who was underneath them?
>
> A. Yes…
>
> Q: And you intended for them to be able to export that information, at least the contact information, as they desired, right?
>
> A: Yes….
>
> Q: That was the intent?
>
> A: Well, I mean, it was the intent to give them access.
>
> Q: Right.

Skirm Depo 162:2-20.

AmeriSciences had no control over distributors' access to and use of their downline information.   The only data restricted to the distributors were social security numbers and passwords.   In any event, the (former) distributors of AmeriSciences wanted the contact information from their downline transferred to Organo Gold.  Skirm Depo 152:23-153:10; 157:21-158:4; 168:20-171:3.

Save and except for social security information and passwords, AmeriSciences allowed customer service employees and distributors full access to the distributor list and database. Skirm Depo 25:6-27:15; 37:9-14.

9

I.   *Downline Genealogy Constitutes a Distributor's Contacts*

A distributor's downline is people you signed up, "[i]t's your friends or your friends of friends…"  Skirm Depo 21:4-17.

J.   *Disclosures of Distributor Contact Information*

On April 13, 2012, all of the highest-level distributors, including Kroos, Wilson, Henderson, Wascovich, Giammalva, Fertig, and Heitman obtained all of their downline information for their transmission to Organo Gold.  Skirm Depo 142:6-143:13.

From April 16-20, 2012, Mr. Skirm released to the distributors their downline information. Mr. Skirm had no issue sending the distributors this information because "they already had access to this information…"  Skirm Depo 211:22-212:11; 212:17-213:3; Skirm Depo Ex. No. 18.

On April 16, 2012, Mr. Skirm sent Mr. Cocheu a list of distributors from AmeriSciences' database.  Mr. Skirm insisted on sending this list to Mr. Cocheu instead of directly to Organo Gold as instructed by Mr. Cocheu because it contained distributors' social security numbers, passwords and other similar information.  Skirm Depo 58:9-21; 59:1-61:1.

Mr. Skirm sent another list to Mr. Cocheu on April 19, 2012 in a different format.  Skirm Depo 71:22-72:14.

K.   *Former Distributors of AmeriSciences Join Organo Gold*

Mr. Skirm, as an employee of AmeriSciences and then later with Organo Gold in 2012 has a unique personal knowledge of events.  Mr. Skirm observed that Organo Gold's use of the information was limited to importing information into Organo Gold's system.  Mr. Skirm, despite an antagonism towards Organo Gold, could recall no specific use of the distributor information other than its import.  Skirm Depo 163:22-164:17; 167:9-15; 166:20-168:5; 168:6-19

10

L.  *Contract to Purchase Software*

Organo Gold contracted with AmeriSciences for the licensing of AmeriSciences'
Warehouse Management System computer program for $10,000.00.  No additional software went
to Organo Gold. "The acquisition of the software was done above board, everything was clean."
Skirm Depo 120:21-126:10; 199:11-16.

Payment of the $10,000.00 for the computer program was contingent upon Organo Gold's
"acceptance" of the software.  The computer program "was never completely activated or
implemented." Skirm Depo 190:20-25; 191:23-193:17; Skirm Depo Ex. No. 16.

## V.   ARGUMENT & AUTHORITY

A.  *Summary Judgment Standard*

In *Celotex Corp.*, 477 U.S. at 322, the United States Supreme Court held that under Rule
56(c) of the Federal Rules of Civil Procedure, summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as a matter of law.

477 U.S. at 324.

The substantive law determines which facts are material.  *See Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 247 (1986).  The court must examine these facts and the inferences therefrom
in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.*, 475 U.S. 574, 587-88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655
(1962); *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The burden of proof is on the moving party to show an absence of evidence to support the
non-moving party's case.  *See Celotex Corp.,* 477 U.S. at 322-27.  Once the moving party
discharges this burden, the non-moving party must then do more than simply raise some

"metaphysical doubt" as to the matter at issue, but rather must come forward with some colorable evidence in support of its legal theories in order to withstand the motion. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 586; *Anderson*, 477 U.S. at 249-50.

In this instance, the application of law to summary judgment fact requires the entry of judgment dismissing the claims against OGI, OGE, and Mr. Buggs.

B. *Was There a Trade Secret?*

The Trustee's distributor list/network case is founded on trade secrets.  If there are no trade secrets, the Trustee's claims fail.    Material to the trade secret issues are (a) the underlying information's being the general skills, information, and knowledge of the distributors, (b) separate disclosures of information by distributors and AmeriSciences without attempt to maintain confidentiality, and (c) the propriety of OGE, OGI, and Mr. Buggs' actions.

This case parallels *Stemtech Int'l, Inc. v. Drapeau*, No. 1:16-cv-918-R (W.D. Tex. Dec. 27, 2016).[6]  In that case, the plaintiff alleged that an executive stole the distributor list of a multi-level marketing business and took the list to a competing company.  *Id.*

In *Stemtech Int'l, Inc.*, the Western District of Texas stated:

As for Stemtech's allegations that Drapeau is soliciting its distributors…. Stemtech has also put forward no evidence that Drapeau has disclosed or used any supplier "list…"

As Defendants point out, Stemtech does not establish that much of the relevant information warrants trade secret protection.  For example, while a confidential distributor list could warrant protection, Stemtech has not produced any evidence – other than speculation – that Drapeau has access to a distributor "list," or that he used such a list to contact employees…

*Id.*

---

[6] A true and correct copy of the *Stemtech Int'l, Inc.* is attached as Exhibit E and incorporated by reference.

The important facts of this case to apply to law are:

a.  No confidential relationship existed between OGI, OGE, and Mr. Buggs and AmeriSciences at the time of the disclosure of the distributor list;

b.  The disclosure of the distributor list and its information occurred <u>with</u> consent;

c.  The disclosures occurred without confidentiality designations or indicia of confidentiality; and

d.  The disclosed information constituted the "general, skills, and knowledge" of the distributors.

Unless a confidential relationship between a plaintiff and defendant exists at the time information is disclosed, a defendant's use of the information is not actionable.  *See Aerospace America v. Abatement Technologies*, 738 F.Supp. 1061, 1071 (W.D. Mich. 1990).

Information subject to trade secret protection can include compilations, financial data and lists of actual and potential customers. *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22-23 (Tex.App.—Houston [1st Dist.] 1998, no pet.).   The information must confer a competitive advantage over those who do not know or use it. *See*, *e.g.*, *Sikes v. McGraw-Edison Co.*, 665 F.2d 731, 734 (5th Cir.1982).

Reasonable effort to keep the information secret is required.  Reasonable effort includes advising employees of and limiting access to trade secrets and entering into confidentiality agreements with employees and third parties.  *See Metallurgical Indus. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986) (<u>Information will not qualify as trade-secret if disclosed to a 3rd party without first securing a non-disclosure agreement</u>.).

In considering a trade secret, a court should assess the measures a plaintiff takes to guard the secrecy of proprietary information. *See In re Union Pac. R.R.*, 294 S.W.3d 589, 592 (Tex. 2009); *e.g.*, *Waste Mgmt. v. Abbott*, 406 S.W.3d 626, 636 (Tex. App.—Eastland 2013, pet. denied); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 875 (5th Cir. 2013).

When considering secrecy, a court should assess the extent to which the proprietary information is known by a plaintiff's employees and others involved in the plaintiff's business. *See In re Union Pac.*, 294 S.W.3d at 592; *Wellogix, Inc.*, 716 F.3d at 875.   Key is whether the plaintiff restricts access to the secret information to only those who need to know. *See, e.g.*, *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (Data access limited to four employees.); *Auto Wax Co. v. Byrd*, 599 S.W.2d 110, 112-13 (Tex. App.—Dallas 1980, no writ) (Formulas not secret when written on production sheets shared among several employees and kept in unlocked cabinet.).

Professional contacts made during employment are an employee's general experience that he is free to use following termination of employment.  *See Philip H. Hunke, D.D.S., M.S.D., Inc. v. Wilcox*, 815 S.W.2d 855, 858 (Tex. App.—Corpus Christi 1991, writ denied).  "General skills, knowledge, and experience" acquired during employment can be used in future employment, even if same is obtained through "complex and extensive training." *See American Derringer Corp. v. Bond*, 924 S.W.2d 773, 776-78 (Tex.App.—Waco 1996, no writ).

To qualify as a trade secret, the information must be "generally unknown."  And, the information must not be readily ascertainable by proper means.  *See A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 901-02 (S.D. Tex. 2015) (citing *Carson Prods. Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979) ("However strong may be . . . the other indicia of trade secret status, it is elemental that . . . [it] must be secret.").

Public availability of information makes the information ineligible for trade secret protection. *See id.*  Disclosure not accompanied by a confidentiality designation renders the information public.  *See Polar Molecular Corp. v. Amway Corp.*, 1.07-CV-460, 2008 WL 907472 (W.D. Mich. Mar. 31, 2008) (Information not a trade secret where disclosure not accompanied by a confidentiality designation).

14

Applying summary judgment facts to the claims against OGI, OGE, and Mr. Buggs, there is no dispute that AmeriSciences and the distributors, as independent contractors with unfettered access to their downlines, separately disclosed the distributor list and its underlying information without the pretext of confidentially. And, there is no dispute that the information generally consisted of the distributors' general skills, knowledge, and information that they disclosed with AmeriSciences' consent (*i.e.* contact information of the distributors' family and friends). Accordingly, the distributor list and the information contained therein was not a trade secret when disclosed to OGI, OGE, and Mr. Buggs.

### C.  No Proof of Use

Misappropriation of trade secrets requires a "use" of the trade secret to seek profit.  *See Atlantic Richfield Co. v. Misty Prods.*, 820 S.W.2d 414, 422 (Tex.App.—Houston [14th Dist.] 1991, writ denied).  There must be an actual attempt to profit from the trade secret. *Id*.

The evidence shows no use by Mr. Buggs of the distributor list.  OGI and OGE uploaded the distributor list information into their database, but not for profit.  Instead, the information existed for the convenience of distributors; profiles were created so a distributor could contract with Organo Gold without re-inputting information.

### D.  No Misappropriation, Fraudulent Transfer or Conversion – OGI, OGE and Mr. Buggs Did Nothing Wrong

Having already shown, as a matter of law, that any information received by OGI, OGE, and Mr. Buggs did not qualify for "trade secret" status.  If such is necessary, no misappropriation, conversion, or fraudulent transfer occurred.  To prevail on his claims, the Trustee needs to prove that OGI, OGE, and Mr. Buggs did something they should not have done.  Use of a trade secret is actionable if the defendant acquired the trade secret by improper means. *See Hyde Corp. v.*

15

*Huffines*, 314 S.W.2d 763, 768-69 (Tex.1958); *Astoria Indus. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex.App.—Fort Worth 2007, pet. denied). The Restatement defines "improper means" as those that fall below the generally accepted standards of commercial morality and reasonable conduct. Restatement (3d) of Unfair Competition §§40(b)(2), 43 & cmt. c.

In the event of the acquisition of a trade secret from a third party, use or disclosure is improper if a defendant is "on notice" of a mistaken disclosure or breach of duty.  Restatement (3d) of Unfair Competition §40(b)(3), (b)(4); Restatement of Torts §757(d) & cmt. *l*; *See Metallurgical Indus.*, 790 F.2d at 1204.

Conversion requires the wrongful exercise of dominion or control.  *See Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex.1992).  Fraudulent transfer requires intent to defraud a creditor. *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 787-88 (Tex.App.—Houston [1st Dist.] 2004, no pet.).  Unjust enrichment requires benefit from another through fraud, duress, or taking an undue advantage.  *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992).

Any information received was, not by wrongdoing by OGI, OGE, and Mr. Buggs, but with specific consent of Amerisciences and voluntary.  The evidence establishes the failure of the Trustee's misappropriation, conversion, fraudulent transfer, and unjust enrichment claims.

*E.  No Avoidable Transfer of Distributor "Network," List, Software, License or Other Assets*

Throughout his complaint, the Trustee conflates distributor list and distributor network to equate the disclosure of AmeriSciences' distributor list to the "transfer" of AmeriSciences' business.  By the Trustee's logic, OGI, OGE, and Mr. Buggs' obtained AmeriSciences' business without reasonably equivalent value by receiving a distributor list on April 19, 2012.

16

To establish his claim, the Trustee must show the transfer of "an interest of the debtor in property." 11 U.S.C. § 548.  11 U.S.C. § 101(54)(D) defines "transfer" as:

> Each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with-
>
> > i.  Property; or
> >
> > ii. An interest in property.

11 U.S.C. § 548's "interest of the debtor" means "property of the estate" as defined in 11 U.S.C. § 541. *See Begier v. Internal Revenue Service,* 496 U.S. 53, 59 (1990).   Accordingly, 11 U.S.C. § 548 applies to transfers affecting property that would have been property of the bankruptcy estate but for the transfer that diminishes the value of the debtor's bankruptcy estate. *See In re Jeffrey Bigelow Design Group,* 956 F.2d 479, 485 (4th Cir. 1992).

Applying the above to summary judgment fact, no avoidable transfer of AmeriSciences' <u>business</u> occurred.  Such a "transfer" would require a showing that AmeriSciences and Organo Gold are the same business when evidence establishes the businesses as distinct.  *See, e.g. In re 3dfx Interactive, Inc.,* 389 B.R. 842, 875-80 (N.D. Cal. 2008) (The Court declined to find that an asset purchase agreement was structured to transfer a business.  The Court also declined to find a transfer of a workforce; although the acquisition of employees was sought.).

The Trustee cannot avoid the transfer of the distributor list because the information constituted the general skills, knowledge, and experience of AmeriSciences' distributors as has already been discussed in full above; this is not valuable information that had been kept secret. *See, e.g. In re M. Silverman Laces, Inc.*, 404 B.R. 345, 360-61 (S.D.N.Y. 2009) ("[T]he list did not contain information of value that had been kept secret and, therefore, there would not have been a 'transfer' for avoidance purposes.").

17

Turning to the balance of assets the transfer of which is sought to be avoided, no "transfer" of software occurred.  The evidence is that OGI and OGE sought to <u>license</u> the software but could not get the software to work.  And, AmeriSciences sold the software and its license rights to SRD. Finally, no evidence exists of the transfer of a Columbia distributor license or other assets that the Trustee is unable to identify in its complaint.

### F.   *The Trustee Sold His Claims to SRD*

Judge Paul's May 9, 2013 order approved the sale of all AmeriSciences' assets, save and except for claims arising under Chapter 5 of the Bankruptcy Code.  For this reason, all claims of the Trustee save and except for the claims arising under Chapter 5 of the Bankruptcy Code must be dismissed.

### G.   *No Tortious Interference with Distributor Contracts*

The Trustee complains of OGI, OGE, and Mr. Buggs' solicitation of distributors to breach contracts and encourage others to breach contracts.  The Trustee ignores AmeriSciences' defaults on obligations to pay and deliver product to distributors.  And, the complaint assumes valid and existing contracts between the distributors and AmeriSciences.

To prove his case, the Trustee must establish intentional interference.  *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex.1998); *Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex.1992).  Required is an intent to interfere, not intent to do acts that occurred.  *Id.*

The Trustee must also prove actual damage or loss resulting from the interference.  *See, e.g.*, *KTRK TV, Inc. v. Fowkes*, 981 S.W.2d 779, 790 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (No interference because employee still employed with same salary and benefits after

alleged interference.), *disapproved on other grounds, Turner v. KTRK TV, Inc.*, 38 S.W.3d 103 (Tex.2000).

Noting AmeriSciences' invitation to meet, speak with, and contract with distributors, the Trustee is estopped from complaining of OGI, OGE, and Mr. Buggs' conduct. *See Frost Nat'l Bank v. Alamo Nat'l Bank*, 421 S.W.2d 153, 158 (Tex.App.—San Antonio 1967, writ ref'd n.r.e.). And, AmeriSciences was unable to perform its contract with distributors. *See Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied).

The evidence establishes AmeriSciences' defaults on its obligations to its distributors and invitation to speak with distributors, as well as the lack of correlation between AmeriSciences' distributors leaving AmeriSciences and OGI, OGE, and Mr. Buggs' conduct.

*H.  No Aiding & Abetting Breach of Fiduciary Duty*

To prevail on a claim for aiding and abetting breach of fiduciary duty, the Trustee must establish OGI, OGE, and Mr. Buggs' <u>knowing</u> participation in actionable conduct and intent to assist in the commission of a tort.  *See Cox Tex. Newspapers, L.P. v. Wooten*, 59 S.W.3d 717, 722 (Tex. App.--Austin 2001, pet. denied); *Kline v. O'Quinn*, 874 S.W.2d 776, 786-87 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

The breaches of fiduciary duties complained of by the Trustee are Mr. Cocheu and Mr. Gallardo's misappropriating trade secrets, transferring assets, interfering with distributor agreements, and organizing the departure of AmeriSciences' distributor network for personal gain to the detriment of AmeriSciences' creditors during the zone of insolvency.

The evidence establishes that OGI, OGE, and Mr. Buggs never <u>knowingly</u> participated in actionable conduct and intended to assist in the commission of a torts.

## VI.  CONCLUSION

The May 9, 2013 Order is dispositive, the Trustee's claims for trade secret misappropriation, conversion, tortious interference with contract, aiding and abetting breach of fiduciary duty, unjust enrichment, fraudulent transfer (actual and constructive) under the Texas Uniform Fraudulent Transfers Act must be dismissed.

There is no genuine issue of material fact as to the existence of a trade secret, as a matter of law, the Trustee's claims for trade secret misappropriation, conversion, tortious interference with contract, aiding and abetting breach of fiduciary duty, unjust enrichment, fraudulent transfer (actual and constructive) under 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfers Act, and avoidable transfers under 11 U.S.C. § 550 must be dismissed.

There is no genuine issue of material fact as to misappropriation of trade secrets, as a matter of law, the Trustee's claims for trade secret misappropriation, conversion, tortious interference with contract, aiding and abetting breach of fiduciary duty, unjust enrichment, fraudulent transfer (actual and constructive) under 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfers Act, and avoidable transfers under 11 U.S.C. § 550 must be dismissed.

There is no genuine issue of material fact that, at all times, OGI, OGE, and Mr. Buggs did nothing wrong and acted with the consent of AmeriSciences and its distributors.  And there is no genuine issue of material fact that no transfer of trade secrets, software or licenses occurred. Accordingly, Defendants are entitled to summary judgment dismissing the Trustee's claims.

## VII.  PRAYER

WHEREFORE, Defendants ask the Court to enter summary judgment dismissing the Trustee's claims against them, and for such other and different relief to which they may be entitled.

Respectfully submitted,

**NICHAMOFF LAW, P.C.**

*/s/ Seth A. Nichamoff*
Seth A. Nichamoff
State Bar No. 24027568
Fed. I.D. No. 27002
2444 Times Boulevard, Suite 270
Houston, Texas 77005
(713) 503-6706 Telephone
(713) 360-7497 Facsimile
seth@nichamofflaw.com

-and-

**JAMIE KING, P.C.**

Jamie King
State Bar No. 24043755
Fed. I.D. No. 566838
P.O. Box 5757
Kingwood, Texas 77325
(713) 521-6558 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

**ATTORNEYS FOR DEFENDANTS HOLTON BUGGS ORGANO GOLD INT'L, INC. AND ORGANO GOLD ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, October 02, 2017, a true and correct copy of the foregoing was forwarded to the following counsel of record pursuant to the Federal Rules of Federal Procedure and the Local Rules of the United States District Court for the Southern District of Texas.

Steven R. Rech, Esq.
Kari B Coniglio, Esq.
John J. Sparacino, Esq.
Vorys, Sater, Seymour and Pease L.L.P.
700 Louisiana Street, Suite 4100
Houston, Texas 77002
srech@vorys.com
kbconiglio@vorys.com
jjsparacino@vorys.com

*Attorneys for Plaintiff Thomas H. Grace, Chapter 7 Trustee*

David W. Anderson, Esq.
Law Office of David W. Anderson
P.O. Box 649
Leander, Texas 78646
dwanderson@ralaw.net

*Attorney for Defendants Barry Cocheu and Kara Cocheu*

Margaret Maxwell McClure, Esq.
Attorney at Law
909 Fannin, Suite 3810
Houston, Texas 77010
margaret@mmmcclurelaw.com

Thomas H. Grace, Esq.
Vorys, Sater, Seymour and Pease L.L.P.
 700 Louisiana Street, Suite 4100
Houston, Texas 77002
thgrace@vorys.com

*Attorneys for Debtor AmeriSciences, L.P.*

*/s/ Seth A. Nichamoff*
Seth A. Nichamoff

22