IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY D. TOW, Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| Vs. | § | Civil Action No.: 4:16-cv-643 |
| | § | |
| ORGANO GOLD INT'L, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MOTION FOR FINAL SUMMARY JUDGMENT OF DEFENDANTS 3K MARKETING, L.P. AND TROPEZ MANAGEMENT, INC. & MEMORANDUM IN SUPPORT THEREOF**

Seth A. Nichamoff
**NICHAMOFF LAW, P.C.**
2444 Times Boulevard, Suite 270
Houston, Texas 77005
(713) 503-6706 Telephone
(713) 360-7497 Facsimile
seth@nichamofflaw.com

-and-

Jamie King
**JAMIE KING, P.C.**
P.O. Box 5757
Kingwood, Texas 77325
(713) 521-6558 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

**ATTORNEYS FOR DEFENDANTS ORGANO GOLD INT'L, INC., ORGANO GOLD ENTERPRISES, INC., HOLTON BUGGS, 3K MARKETING, L.P., DOING BUSINESS AS OG UNIVERSITY, AND TROPEZ MANAGEMENT, INC.**

i

## TABLE OF CONTENTS

I.      Nature & Stage of Proceeding ................................................................................. 1

II.     Statement of Issues ................................................................................................ 1

III.    Summary of the Argument ...................................................................................... 1

IV.     Summary Judgment Facts ....................................................................................... 3

   A.   Plaintiff's Claimed Wrong ................................................................................ 3

   B.   Plaintiff's Claimed Injuries .............................................................................. 4

   C.   Mr. Weingust Calculates Damages as the Value of the "Distributor Network" ............................... 5

   D.   Pertinent Facts Re: Timeliness of Plaintiff's Claim ......................................... 6

   E.   Uncontroverted Facts Re: Alter Ego Claims ..................................................... 7

V.      Argument & Authority ............................................................................................ 8

   A.   Summary Judgment Standard ............................................................................ 8

   B.   Plaintiff's Fails to Allege Damages Arising from the Asserted Claims ............ 9

   C.   Summary Judgment Evidence Establishes Expiration of Limitations Periods ............ 15

   D.   Summary Judgment Evidence Establishes No Alter Ego Claim ..................... 16

VI.     Conclusion ............................................................................................................ 17

VII.    Prayer ................................................................................................................... 17

Certificate of Service ..................................................................................................... 19

I<small>NDEX OF</small> A<small>UTHORITIES</small>

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ..................................................... 8, 9

*Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358 (9th Cir.1997) ................. 11

*Browning-Ferris, Inc. v. Reyna*, 852 S.W.2d 540, 549 (Tex.App.—San Antonio 1992), rev'd on other grounds, 865 S.W.2d 925 (Tex. 1993) ..................................................................................... 12

*Calce v. Dorado Expl., Inc.*, 309 S.W.3d 719, 738 (Tex. App.—Dallas 2010, no pet.) ............................ 12

*Commercial Credit Equip. Corp. v. Elliott*, 414 S.W.2d 35, 43 (Tex.App.—Eastland 1967, writ ref'd n.r.e.) ................................................................................................................................... 13

*Elcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 214 (Tex.App.—Dallas 1973, writ ref'd n.r.e.).... 11

*Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007). .................................. 15

*First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986) .................................................................. 15

*Fluor Enters. v. Conex Int'l*, 273 S.W.3d 426, 447 (Tex. App.—Beaumont 2008, pet. denied)............... 12

*Glosban v. Watts Detective Agency, Inc.*, 21 B.R. 963, 971-976 (D. Mass 1981)...................................... 10

*Houston Mercantile Exch. Corp. v. Dailey Pet. Corp.*, 930 S.W.2d 242, 247-48 (Tex.App.—Houston [14th Dist.] 1996, no pet.) ............................................................................................................. 11

*In re 3dfx Interactive, Inc.,* 389 B.R. 842, 875-80 (N.D. Cal. 2008) ......................................................... 10

*In Re: Accurate Home Inspections, Inc.*, 348 B.R. 354 (Bankr. E.D. La. 2005) ....................................... 10

*In re: Intelligent Direct Marketing*, 518 B.R. 579 (E.D. Cal. 2014).......................................................... 10

*Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010)..................................................................... 16

*lcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 214 (Tex.App.-Dallas 1973, writ ref'd n.r.e.) ......... 14

*Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) ......................................................... 16, 17

*Miller v. Argumaniz*, 479 S.W.3d 306, 311 (Tex. App. — El Paso 2015, pet. denied) .............................. 14

*Nichols v. Lin*, 282 S.W.3d 743, 747 (Tex.App.—Dallas 2009, no pet.)................................................... 17

*Orthotec, LLC v. REO Spineline, LLC*, 438 F.Supp.2d 1122 (C.D. Cal. 2006).......................................... 10

*R.J. Suarez Enters. v. PNYX L.P.*, 380 S.W.3d 238, 242 (Tex.App.—Dallas 2012, no pet.) .................... 13

*Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) ..................................................... 8

*Salazar v. Coastal Corp.*, 928 S.W.2d 162, 169-70 (Tex.App.—Houston [14th Dist.] 1996, no writ) ...... 16

*Sandare Chem. Co. v. WAKO Int'l*, 820 S.W.2d 21, 24 (Tex. App.—Fort Worth 1991, no writ) ............. 13

*Stewart & Stevenson Servs. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 108 (Tex. App.— Houston [14th Dist.] 1994, writ denied) ................................................................................................................................... 16

*United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) ....................................... 13

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962 ................................................................................ 8

*Vanderpool v. Vanderpool*, 442 S.W.3d 756, 762 (Tex.App.—Tyler 2014, no pet.) ................................. 15

*Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013) ..................................................... 12

*Willis v. Donnelly*, 199 S.W.3d 262, 278 n.33 (Tex. 2006) ...................................................................... 15

## Rules

Rule 15(c) of the Federal Rules of Civil Procedure ...................................................................................... 16

Rule 56 of the Federal Rules of Civil Procedure .......................................................................................... 1

Rule 56(c) of the Federal Rules of Civil Procedure ....................................................................................... 8

COME NOW, Defendants, 3K Marketing, L.P., doing business as OG University, and Tropez Management, Inc., by and through their attorneys, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move for final summary judgment against Plaintiff, Rodney D. Tow, Chapter 7 Trustee, and respectfully show as follows:

## I.   NATURE & STAGE OF PROCEEDING

Plaintiff, Rodney D. Tow, Chapter 7 Trustee, complains of Defendants, Organo Gold Int'l, Inc., Organo Gold Enterprises, Inc., Holton Buggs, 3K Marketing, L.P. and Tropez Management, Inc., for trade secret misappropriation, conversion, tortious interference with contract, aiding and abetting breach of fiduciary duty, unjust enrichment, fraudulent transfer (actual and constructive) under 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfers Act, and avoidable transfers under 11 U.S.C. § 550.

The discovery period expired on September 15, 2017 and the dispositive motions deadline is January 18, 2018.  Docket call is set for April 27, 2018.

## II.   STATEMENT OF ISSUES

A.  Whether the summary judgment evidence establishes damages arising from the alleged transfers such that Defendants are entitled to dismissal as a matter of law.

B.  Whether the summary judgment evidence establishes that OG University, 3K Marketing, L.P. and Tropez Management, Inc. are not the alter egos of Holton Buggs such that they are entitled to dismissal as a matter of law.

C.  Whether applicable limitations periods are expired such that Defendants are entitled to dismissal as a matter of law.

## III.   SUMMARY OF THE ARGUMENT

First, Defendants incorporate by reference the Motion for Final Summary Judgment of Organo Gold Int'l, Inc. ("OGI"), Organo Gold Enterprises, Inc. ("OGE") and Holton Buggs.

Plaintiff's claims against Defendants, OGI, OGE, Mr. Buggs, 3K and Tropez are fiction; no misappropriation or transfer of trade secrets ever occurred.  Moreover, Plaintiff can articulate no damages arising from the complained of trade secrets.  The only remedy available to Plaintiff for the claimed trade secrets is lost profits.

Yet, Plaintiff instead argues its damages to be the value of the distributors of Debtor, AmeriSciences, L.P., ("AmeriSciences") as if humans can be fraudulently transferred. AmeriSciences' lost profits are not part of the summary judgment record[1], and Defendants are entitled to final summary judgment dismissing claims arising from the trade secrets.

Additionally, Plaintiff asserts that Organo Gold University ("OGU"), 3K Marketing, L.P. ("3K") and Tropez Management, Inc. ("Tropez") are the alter egos of Mr. Buggs.  The elements of alter ego follow:

 a.  Financial interest;

 b.  Unity; and

 c.  Injustice.

Noting that OGU is an assumed name of 3K, 3K and Tropez are entitled to final summary judgment dismissing OGU, 3K and Tropez because:

 a.  Summary judgment evidence establishes that the "financial interest" element cannot be met;

 b.  Summary judgment evidence establishes that there is no "unity";

 c.  Summary judgment evidence establishes that only holding Mr. Buggs liable would not result in injustice.

---

[1] Defendant's Expert, Gary Abdalla, calculated that "The Organo Gold Defendants' total net profits realized through the [AmeriSciences] Network members that joined Organo Gold was approximately $56,000 in all years."  Mr. Weingust rejects this lost profits calculation out of hand as simply unsupported.  Please see Paragraphs 51-52 of Page 98 of Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

Finally, 3K and Tropez are entitled to summary judgment as Plaintiff's claims against them are barred by applicable limitations periods.

## IV.    SUMMARY JUDGMENT FACTS

### A.    *Plaintiff's Claimed Wrong*

In his Second Amended Complaint, Plaintiff summarizes his claims as follows:

1) Valuable assets, including trade secrets, of AmeriSciences were taken from AmeriSciences without consideration and delivered to Organo Gold and Buggs;

2) Barry and Louis, with the assistance and encouragement of the other Defendants, pursued actions that were in disregard and breach of their fiduciary duties to AmeriSciences;

3) The IMC Defendants, with the assistance and encouragement of the other Defendants, breached existing contracts with AmeriSciences; and

4) Each of the Defendants assisted, encouraged and participated in breaches of contracts with AmeriSciences by other AmeriSciences distributors.[2]

With respect to the "valuable assets," Plaintiff complains of the April 2012 transfer of:

[T]he coveted list of AmeriSciences IMCs, including IMC names, tax identification numbers, home and business addresses, e-mail addresses, business and cellular telephone numbers, usernames, passwords, and status and rank for compensation purposes (collectively, the "List")…

[C]ertain WMS Software, a Columbia Distributor License and other assets and information, including the Network Information (defined below) (together with the List, the "AmeriSciences Assets")…

[T]he List (and information compiled therein), IMC profiles, genealogical and downline reports, customer information and other information detailing the AmeriSciences' business methods and "network" (the "Network Information")…[3]

---

[2] Please see paragraph 37 of Plaintiff's Second Amended Complaint (Doc. No. 73).
[3] Please see paragraphs 37, 38, 53, 58, 59, 70 114 of Plaintiff's Second Amended Complaint (Doc. No. 73).

3

### B. *Plaintiff's Claimed Injuries*

In his response to the motion for summary judgment of OGI, OGE and Mr. Buggs, Plaintiff describes the injuries arising from the above complained of conduct[4] as follows:

> The Organo Defendants instantly acquired a large number of downline distributors—including many highly active distributors—without having to expend the cost, time, and effort normally required to obtain a large number of distributors. Montesinos Dep. 69:5–8; Buggs Dep. 70:23–71:4. *See also* Weingust Aff. ¶ 20 (valuing AmeriSciences' distributor network at $3,451,166 at the time it was wrongfully transferred to the Organo Defendants)…[5]

> The facts demonstrate that the AmeriSciences' distributor list had significant value, and the simple addition of IMCs open to the concept of selling Organo Gold's product provided a benefit to the Defendants. *See* Weingust Aff. ¶ 20 (valuing AmeriSciences' distributor network at $3,451,166 on the date it was misappropriated by the Organo Defendants); Montesinos Dep. 166:14–19 (explaining the value of AmeriSciences' distributor network); Skirm Dep. 231:9–12 (explaining the value of adding number of distributors). Buggs acknowledged receipt of the distributor list, and acknowledged that several IMCs were added to his downline at Organo Gold. Buggs Dep. 94:23–95:5, 99:16–20. Thus, the Organo Defendants "used" the distributor network.[6]

> ***The Trustee argues the injury for the "acquisition of the distributor network" or "wrongful obtainment and use of AmeriSciences' trade secret" as follows:***

> The Trustee's damages expert, Scott Weingust, has concluded that AmeriSciences was damaged in the amount of $3,451,166 by the unlawful and improper acts of the Organo Defendants. *See* Weingust Aff. ¶ 20.[7]

> ***The Trustee argues the injury for the "tortious interference" as follows:***

> The evidence shows that the Organo Defendants' actions proximately caused AmeriSciences' damages. At the urging of the Organo Defendants, *see* Perrett Dep. ex. 6, Cocheu, Gallardo, and Buggs met with high-ranking AmeriSciences distributors to encourage them to abandon AmeriSciences and their continuing obligations to AmeriSciences under the IMC Agreements. *See* Buggs Exam.

---

[4] **The Trustee argues of the existence of a transfer claim valued at $100,000 for the transfer of software. This transfer is satisfied by co-defendants' payment $110,000 in settlement of Plaintiff's transfer claims. See Pages 19 and 42 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66). The Bankruptcy Court approved the settlement in Doc. No. 210 in Case No. 12-37545. The Trustee is only entitled to a "single satisfaction" under 11 U.S.C. § 550(d).**

[5] Page 19 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).

[6] Page 31 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).

[7] Page 32 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).

102:12–105:4; Perrett Dep. 24:15–25. These actions resulted in actual damages in the amount of $3,451,166. *See* Weingust Aff. ¶ 19.[8]

***The Trustee argues the "unjust enrichment" as follows:***

The acquisition of "high value, high dollar, highly successful" distributors provided the Organo Defendants with increased sales opportunities. *See* Montesinos Dep. 46:24–47:5. By acquiring a distributor network valued at $3,451,166, Weingust Aff. ¶ 20, the Organo Defendants avoided significant investments of time, money, and effort. The evidence demonstrates that the Organo Defendants were unjustly enriched at the expense of AmeriSciences. Accordingly, the Organo Defendants' Motion should be denied.[9]

***The Trustee describes the conduct aiding and abetting the breach of fiduciary duty injury as follows:***

Buggs instead chose to proceed forward with the theft of AmeriSciences' valuable assets.[10]

***The Trustee describes the "transfer" as follows:***

Most tellingly, the undisputed facts in the record establish that AmeriSciences itself received nothing in exchange for its most valuable assets—assets valued at over $3 million as of the time of the transfer. Cocheu Exam. 206:2–24 (admitting AmeriSciences received no payment for the transfers); Weingust Aff. ¶ 20 (valuing AmeriSciences' distributor network at $3,451,166 at the time it was wrongfully transferred to the Organo Defendants).[11]

C. *Mr. Weingust Calculates Damages as the Value of the "Distributor Network"*

I was asked by the trustee to determine the value of the AmeriSciences distributor network…[12]

I have complied with all required aspects of the SSVS in performing the valuation of the distributor network.  I sued the cost approach and income approach when valuing the distributor network.  I considered the market approach but found no market transactions involving the purchase and sale of comparable assets…[13]

---

[8] Page 35 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).
[9] Page 39 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).
[10] Page 37 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).
[11] Page 41 of Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 66).
[12] Please see Paragraph 5, Page 3 of Mr. Weingust's Affidavit, Attached as Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).
[13] Please see Paragraph 6, Pages 3-4 of Mr. Weingust's Affidavit, Attached as Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

The cost approach generates an indication of value for an asset… Under the cost approach, valuation analysts have two primary methodologies available to them, the replacement cost new methodology and the reproduction cost new methodology…[14]

The other approach I used is the income approach.  The underlying theory behind the income approach is that "the value of the subject intangible asset is the present value of the expected economic income to be earned from the ownership of that intangible asset…"  Put another way, "[t]he fair market value of any asset can be expressed as the present value of the future stream of economic benefits that are derived from ownership of the property…"[15]

[In calculating the income approach], I estimated the Distributor Profit from the vantage point of a hypothetical buyer of the distributor network…. [For Organo Gold I estimated] an average annual profit per [Organo Gold] distributor for highly active and not highly active distributors of $820 and $87, respectively… Based on the reported industry data [for a group of fourteen MLM companies that make up a group of hypothetical buyers of the distributor network], the average annual revenue per distributor is $1,392…[16]

As a result of weighing the two indication of value equally, I concluded that the value of the distributor network was $3,451,166 as of the valuation date.[17]

D.  *Pertinent Facts Re: Timeliness of Plaintiff's Claim*

An involuntary petition under Chapter 7 of the Bankruptcy Code was filed in Case No. 12-37545, *In re: AmeriSciences, L.P.*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division on October 4, 2012.[18]

The Bankruptcy Court entered an order for relief in Case No. 12-37545 on November 27, 2012.[19]

---

[14] Please see Paragraph 7, Page 4 of Mr. Weingust's Affidavit, Attached as Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

[15] Please see Paragraph 12, Page 5 of Mr. Weingust's Affidavit, Attached as Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

[16] Please see Paragraphs 17-17, Page 7 of Mr. Weingust's Affidavit, Attached as Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

[17] Please see Paragraph 20, Page 8 of Mr. Weingust's Affidavit, Attached as Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

[18] Please see the Chapter 7 Involuntary Petition (Doc. No. 1) in Case No. 12-37545.

[19] Please see the Agreed Order for Relief (Doc. No. 12) in Case No. 12-37545.

Plaintiff filed his motion for leave to amend complaint adding 3K and Tropez on October 5, 2017.[20]

The Court granted Plaintiff's motion to add 3K and Tropez as defendants on November 14, 2017.[21]

Plaintiff complains of April 2012 events.[22]

There is no dispute that, absent the application of the relation back doctrine, none of Plaintiff's claims against 3K and Tropez are timely, i.e. filed within 2 years of the order for relief or within 4 years of the events giving rise to Plaintiff's claim.

E.   *Uncontroverted Facts Re: Alter Ego Claims*

Plaintiff alleges that Organo Gold University ("OGU"), 3K and Tropez are alter egos.[23]

Per the affidavit[24] and deposition testimony[25] of Mr. Buggs:

a.   OGU was formed and operated for the purpose of training Organo Gold distributors and holding training events. Buggs Depo 20:8-24; 23:5-11; 24:1-3; 22:10-18; 29:9-32:14;

b.   3K is a limited partnership that is a distributor for Organo Gold.  26:1-23; 36:1-15;

c.   Tropez is the managing partner of Organo Gold.  Buggs Depo 73:25-74:1;

d.   OGU is an assumed name of 3K;

e.   Mr. Buggs owns 50% of Tropez; his wife Earlene Buggs owns the remaining 50% of Tropez.  Buggs Depo 5:8-24; 30:14-21;

f.   Tropez owns 2% of 3K.  Mr. Buggs is a limited partner of and owns 49% of 3K and Mrs. Buggs is a limited partner of and owns 49% of 3K.

---

[20] Please see Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 53).
[21] Please see the Court's Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 72).
[22] Please see Plaintiff's Second Amended Complaint (Doc. No. 73).
[23] Please see paragraphs 11-13, page 4 of Doc. No. 73.
[24] The Affidavit of Holton Vincent Buggs, Jr. is attached as Exhibit A and incorporated by reference.
[25] A true and correct copy of the transcript of the September 12, 2017 Deposition of Holton Buggs, Jr. is attached as Exhibit C to the OGI, OGE and Mr. Buggs' Motion for Final Summary Judgment.

g.  The property and assets of 3K and Tropez are kept separate and are not commingled. Buggs Depo 44:6-16;

h.  3K and Tropez are not used for Mr. Buggs' individual purposes;

i.  3K and Tropez are adequately capitalized to meet their obligations as they come due;

j.  The profits of 3K and Tropez are not diverted for personal use;

k.  Holding only 3K and Tropez liable for their actions would not result in injustice. A judgment against 3K and Tropez only would not leave a plaintiff with an uncollectible judgment while allowing Mr. Buggs to go free; and

l.  "Holding only Mr. Buggs liable for his actions would not result in injustice. A judgment against him only would not leave a plaintiff with an uncollectible judgment while allowing 3K and Tropez to go free.

## V.  ARGUMENT & AUTHORITY

### A.  Summary Judgment Standard

In *Celotex Corp.*, 477 U.S. at 322, the United States Supreme Court held that under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

477 U.S. at 324.

The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must examine these facts and the inferences therefrom in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The burden of proof is on the moving party to show an absence of evidence to support the non-moving party's case. *Celotex Corp.,* 477 U.S. at 322-27. Once the moving party discharges this burden, the non-moving party must then do more than simply raise some "metaphysical doubt"

8

as to the matter at issue, but rather must come forward with some colorable evidence in support of its legal theories in order to withstand the motion. *Matsushita Elec. Indus. Co.,* 475 U.S. at 586; *Anderson*, 477 U.S. at 249-50.

In this instance, the application of law to summary judgment fact requires the entry of final judgment dismissing the claims against 3K and Tropez.

B. *Plaintiff's Fails to Allege Damages Arising from the Asserted Claims*

Defendants never engaged in the conduct complained of by Plaintiff. Regardless, Defendants face claims for the misappropriation and transfer of trade secrets. Liability for Plaintiff's claims are addressed in OGI, OGE and Mr. Buggs' motion.

That said, even if it were to be believed that genuine issues of material fact existed regarding liability, Plaintiff's damages for such wrongs are nonexistent. First, Plaintiff alleges damages approaching $100,000 for the software. These damages are neatly resolved by co-defendants' $110,000 settlement discussed above, the $150,000 sale of assets ordered in Case No. 12-37545 and 11 U.S.C. § 550(d)'s single satisfaction rule.

The bulk of Plaintiff's alleged damages arise from the alleged transfer or misappropriation of the "List" and "Network Information," which Plaintiff argues to be worth $3,451,166. Plaintiff reaches this number by estimating industry experienced per human profits and the estimated expense to Plaintiff of building its salesforce.

Defendants are entitled to summary judgment dismissing Plaintiff's claim for such damages because law prohibits recovery of the damages sought by Plaintiff for misappropriation and transfer of trade secrets.

(i)     *No Damages Available for the "Transfer" of People*

Plaintiff asserts that he is entitled to the recovery of what a hypothetical buyer would pay for a "distributor network" as the remedy for the fraudulent transfer of the "List" and "Network Information" under 11 U.S.C. §§ 544 and 548 and Chapter 24 of the Texas Business & Commerce Code, sometimes referred to as the Texas Uniform Fraudulent Transfer Act, or "TUFTA."

Plaintiff does not argue lost profits as his measure of damages and does not provide evidence of the value of the "List" and "Network Information." Instead, Plaintiff values the "distributor network" of AmeriSciences, using a formula estimating AmeriSciences' cost of building its distributor network and the per human income that a hypothetical buyer would generate from the distributors.  Such is impermissible.

Faced with transfers of intangibles, courts decline to accept the transfer of intangibles as being or equaling the transfer of a workforce and business.  *In Re: Accurate Home Inspections, Inc.*, 348 B.R. 354 (Bankr. E.D. La. 2005); *In re: Intelligent Direct Marketing*, 518 B.R. 579 (E.D. Cal. 2014); *In re 3dfx Interactive, Inc.,* 389 B.R. 842, 875-80 (N.D. Cal. 2008).

That said, in the only published circumstance identified by undersigned counsel where a court upheld a jury's award for the "transfer" of a workforce, damages for such transfer were a "lost profits" basis as if a list or roster of employees analogous to a trade secret were transferred. *Glosban v. Watts Detective Agency, Inc.*, 21 B.R. 963, 971-976 (D. Mass 1981) ("[T]he *roster* of… employees, *if not those employees taken as individuals*, could be found to constitute 'property…' with damages being the profits realized by the acquirer of the employees" (emphasis added)).

The above case aside, the mere hiring of employees by an alleged transferor without assignments of contract are not "acquisitions" or "transfers" that can be avoided.  *Orthotec, LLC v. REO Spineline, LLC,* 438 F.Supp.2d 1122 (C.D. Cal. 2006).

10

The Ninth Circuit in *Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.,* 159 F.3d 358 (9th Cir.1997) considered the an alleged transferee's hiring of all of a defunct company's salespeople. In that case Pest Control Advisors ("PCAs").  The Court declined to find a transfer of the PCAs, explaining that:

> The record indicates, however, that ninety percent of the time, clients follow PCAs, and [the alleged transferee] merely offered employment to PCAs that would be out of work when [the debtor] closed its doors. No agreement between [the alleged transferee] and [the debtor] required [the alleged transferee] to employ the PCAs. The fact that [the alleged transferee] managed to sign the PCAs (and thus gain their attendant business) rather than allowing a competitor to employ them is not relevant to the fraudulent transaction issue. The district court properly recognized that the PCAs had to find employment somewhere and that [the alleged transferee] was fortunate to have hired them.

*Id.* at 365.

The long and short is that, even if a fraudulent transfer of assets occurred, which is denied, no damages arose from the transfer because law prohibits the transfer of people as if they are indentured servants to a hypothetical master.  Being that case law prohibits the remedy argued and sought by Plaintiff, the claims against Defendants for misappropriation and transfer of trade secrets fail as Plaintiff cannot meet the burden of establishing damages.

Therefore, Defendants are entitled to summary judgment dismissing Plaintiff's claim for transfers under 11 U.S.C. §§ 544 and 548 and TUFTA as a matter of law.

(ii)     *Evidence of Damages for Misappropriation of Trade Secrets is Lacking*

Plaintiff asserts a claim for the misappropriation of a trade secret. The remedy for misappropriation of trade secrets is a plaintiff's lost profits.  *Houston Mercantile Exch. Corp. v. Dailey Pet. Corp.*, 930 S.W.2d 242, 247-48 (Tex.App.—Houston [14th Dist.] 1996, no pet.); *Elcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 214 (Tex.App.—Dallas 1973, writ ref'd n.r.e.).

A defendant's profits realized from the use of trade secrets can be used to establish a plaintiff's lost profits. *See Calce v. Dorado Expl., Inc.*, 309 S.W.3d 719, 738 (Tex. App.—Dallas 2010, no pet.). Where profits cannot be determined, the value of a trade secret is determined by a finding of what a reasonably prudent investor would pay for that trade secret. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013).

In this action, lost profits are neither asserted nor sought. Instead, Plaintiff presents as summary judgment evidence of damages a calculation of "the historical costs incurred by AmeriSciences to develop the Distributor Network,"[26] defined as "6,411 AmeriSciences distributors along with various contact and other information related to the distributors…," and the profits that a hypothetical buyer could generate on a per distributor basis from the distributor.

The above does not meet the criteria for damages recoverable for the misappropriation of trade secrets. Accordingly, as summary judgment evidence of damages for the misappropriation of trade secrets is lacking, Defendants are entitled to summary judgment dismissing Plaintiff's claim for misappropriation of trade secrets as a matter of law.

*(iii)*    *Evidence of Damages for Tortious Interference with Contract is Lacking*

In an action for tortious interference, a plaintiff can recover the pecuniary loss of the benefits of the contract. *Browning-Ferris, Inc. v. Reyna*, 852 S.W.2d 540, 549 (Tex.App.—San Antonio 1992), rev'd on other grounds, 865 S.W.2d 925 (Tex. 1993). A plaintiff can also recover its lost profits arising from the tortious interference. *Fluor Enters. v. Conex Int'l*, 273 S.W.3d 426, 447 (Tex. App.—Beaumont 2008, pet. denied). Or, a plaintiff can show the defendant's profits as

---

[26] Please see Paragraph 29 of Page 21 and Paragraph 51 of Page 28 of Exhibit 5 to Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 68-1).

evidence of the profits lost by the plaintiff. *Sandare Chem. Co. v. WAKO Int'l*, 820 S.W.2d 21, 24 (Tex. App.—Fort Worth 1991, no writ).

Assuming that there was tortious interference with contract, which is denied, the summary judgment evidence fails to establish lost profits or lost benefits on the contracts allegedly interfered with. Instead, Plaintiff asserts damages for the loss of AmeriSciences' people to Organo Gold. There being no summary judgment evidence of the lost benefit of the contracts or lost profits arising from the breach of contracts, Defendants are entitled to summary judgment dismissing Plaintiff's claim for tortious interference with contract as a matter of law.

*(iv)    Evidence of Damages for Conversion is Lacking*

Assuming that Plaintiff can carry his burden of proving liability for conversion, which is denied, a plaintiff can recover damages for the lost value of the personal property or, for returned property, the loss of use during the property's detention. *R.J. Suarez Enters. v. PNYX L.P.*, 380 S.W.3d 238, 242 (Tex.App.—Dallas 2012, no pet.). Or, a plaintiff can recover lost profits for conversion if a defendant had notice of them. *See Commercial Credit Equip. Corp. v. Elliott*, 414 S.W.2d 35, 43 (Tex.App.—Eastland 1967, writ ref'd n.r.e.).

In this action, there is no allegation or evidence that AmeriSciences was deprived of the use of the "List" and the "Network Information." Accordingly, there are no damages available to Plaintiff for the loss of value or loss of use of the "List" and the "Network Information." *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) (Market value calculation improper because the plaintiff not deprived of use of the customer list and "expert conceded that the customer list had no value under his valuation method if the customers were not generating revenue to whomever held the list.").

Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's claim for conversion as a matter of law.

(v)      *Evidence of Damages for Unjust Enrichment is Lacking*

As with the above, should Plaintiff raise a genuine issue of material fact as to liability, Plaintiff cannot carry his summary judgment as to lost profits.  As with the other causes of action asserted by Plaintiff, the measure of damages is lost profits for unjust enrichment by a trade secret. *See lcor Chem. Corp. v. Agri-Sul, Inc.,* 494 S.W.2d 204, 214 (Tex.App.-Dallas 1973, writ ref'd n.r.e.) (Damages are actual profits resulting from the use or disclosure of the trade secret as unjust enrichment).

Mr. Weingust's report is inadequate to meet Plaintiff's summary judgment burden as to damages.  Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's claim for unjust enrichment as a matter of law.

(vi)     *Evidence of Damages for Aiding & Abetting Breach of Fiduciary Duty is Lacking*

Again, as with the above, should Plaintiff raise a genuine issue of material fact as to liability, Plaintiff cannot carry his summary judgment as to lost profits establishing his right to trial on his claim for aiding and abetting breach of fiduciary duty.

As with the other causes of action asserted by Plaintiff, the measure of damages for aiding and abetting breach of fiduciary duty is lost profits.  *Miller v. Argumaniz*, 479 S.W.3d 306, 311 (Tex. App. — El Paso 2015, pet. denied).  Mr. Weingust's report is inadequate to meet Plaintiff's summary judgment burden as to damages.  Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's claim for aiding and abetting breach of fiduciary duty as a matter of law.

C.  *Summary Judgment Evidence Establishes Expiration of Limitations Periods*

Plaintiff's claims against 3K and Tropez are barred by applicable limitations periods.

Section 24.010 of the Texas Business & Commerce Code, Extinguishment of Cause of

Action, provides that:

> (a) Except as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
>> (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>>
>> (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or
>>
>> (3) under Section 24.006(b) of this code, within one year after the transfer was made.

The limitations period for conversion claims is 2 years.  Tex. Civ. Prac. & Rem. Code

§16.003(a); *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 762 (Tex.App.—Tyler 2014, no pet.).

The limitations period for tortious interference with contract actions is two years.  Tex.

Civ. Prac. & Rem. Code §16.003(a); *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986).

The limitations period for fiduciary duty actions is four years.  Tex. Civ. Prac. & Rem.

Code §16.004(a)(5); *Willis v. Donnelly*, 199 S.W.3d 262, 278 n.33 (Tex. 2006).

The limitations period for trade secret misappropriation actions is three years.  Tex. Civ.

Prac. & Rem. Code §16.010(a).

Unjust enrichment claims are governed by the two-year statute of limitations in Section

16.003 of the Texas Civil Practice and Remedies Code.  *Elledge v. Friberg-Cooper Water Supply

Corp.*, 240 S.W.3d 869, 871 (Tex. 2007).

15

Avoidance actions must be asserted within two years of the later of the entry of an order for relief or one year after the appointment of the first trustee under Section 702 or 1104 of the Bankruptcy Code.  11 U.S.C. § 546(a).

The summary judgment evidence and dockets establish that all of the limitations periods expired prior to 3K and Tropez being added as defendants.

Presumably, Plaintiff seeks to avoid the preclusive effect of limitations through the relation back doctrine.  Rule 15(c) of the Federal Rules of Civil Procedure allows for the "relation back" of amendments to an original pleading. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

In order to establish the "relation back" of pleadings, Plaintiff must establish under Rule 15(c)(1)(C)(ii) that 3K and Tropez "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity."  Plaintiff cannot establish its entitled to the relation back doctrine under Rule 15(c)(1)(C)(ii).

D.  *Summary Judgment Evidence Establishes No Alter Ego Claim*

Turning to Plaintiff's alter ego claims, the corporate veil can be pierced if a corporation is organized and operated as a mere tool or business conduit of a person or another corporation. *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 169-70 (Tex.App.—Houston [14th Dist.] 1996, no writ).

To establish alter ego, a plaintiff must establish:

a. That there is some financial interest, ownership, or control by the defendant. *Stewart & Stevenson Servs. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 108 (Tex. App.— Houston [14th Dist.] 1994, writ denied);

b. A unity between two corporations or between a corporation and an individual that the separateness of the single corporation has ceased. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); and

    c.  That holding only the corporation liable would result in injustice. *Mancorp, Inc.*, 802
        S.W.2d at 228.

Importantly, to establish the element of "unity," a plaintiff must show (1) the degree to which property is kept separate, (2) the financial interest, ownership, and control maintained over the alter ego, and (3) use of the alter ego for individual purposes. *Mancorp, Inc.*, 802 S.W.2d at 22.   Also considered are (1) payments of debts with personal checks or other commingling of funds, (2) representations of financial backing, (3) diversion of profits for personal use, and (4) inadequate capitalization. *Nichols v. Lin*, 282 S.W.3d 743, 747 (Tex.App.—Dallas 2009, no pet.).

Summary judgment evidence establishes that none of the bases for establishing alter ego are available to Plaintiff.  There is no "unity" or "injustice" such that the corporate form must be ignored under an alter ego theory.  Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's alter ego allegations as a matter of law.

## VI.   CONCLUSION

Plaintiff's claims against Defendants remain a work of fiction. So too are Plaintiff's damages - Plaintiff articulate no recognizable damages arising from the complained of trade secrets.  Plaintiff argues its damages to be the value of the distributors on the theory that humans are subject to fraudulent transferred.  On this basis, Defendants are entitled to summary judgment as there is no summary judgment evidence of Plaintiff's damages.

As to limitations, all applicable periods as to 3K and Tropez are past and the relation back doctrine is unavailing.   Finally, with respect to Plaintiff's alter ego theory the summary judgment evidence establishes a lack of financial interest, unity and injustice.

In sum, application of law to summary judgment fact mandates the entry of final judgment dismissing the claims against Defendants.

## VII.    Prayer

WHEREFORE, Defendants ask the Court to enter final summary judgment dismissing Plaintiff's claims against them, and for such other and different relief to which they may be entitled.

Respectfully submitted,

**NICHAMOFF LAW, P.C.**

/s/ Seth A. Nichamoff

_____

Seth A. Nichamoff
State Bar No. 24027568
Fed. I.D. No. 27002
2444 Times Boulevard, Suite 270
Houston, Texas 77005
(713) 503-6706 Telephone
(713) 360-7497 Facsimile
seth@nichamofflaw.com

-and-

**JAMIE KING, P.C.**

Jamie King
Teas State Bar No. 24043755
S.D. Texas Bar No. 566838
P.O. Box 5757
Kingwood, Texas 77325
(713) 521-6558 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

**ATTORNEYS FOR DEFENDANTS ORGANO GOLD INT'L, INC., ORGANO GOLD ENTERPRISES, INC., HOLTON BUGGS, 3K MARKETING, L.P., DOING BUSINESS AS OG UNIVERSITY, AND TROPEZ MANAGEMENT, INC.**

18

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, January 15, 2018, a true and correct copy of the foregoing was forwarded to the following counsel of record pursuant to the Federal Rules of Federal Procedure and the Local Rules of the United States District Court for the Southern District of Texas.

Steven R. Rech, Esq.
Kari B Coniglio, Esq.
John J. Sparacino, Esq.
Vorys, Sater, Seymour and Pease L.L.P.
700 Louisiana Street, Suite 4100
Houston, Texas 77002
srech@vorys.com
kbconiglio@vorys.com
jjsparacino@vorys.com

*Attorneys for Plaintiff Thomas H. Grace, Chapter 7 Trustee*

David W. Anderson, Esq.
Law Office of David W. Anderson
P.O. Box 649
Leander, Texas 78646
dwanderson@ralaw.net

*Attorney for Defendants Barry Cocheu and Kara Cocheu*

Margaret Maxwell McClure, Esq.
Attorney at Law
909 Fannin, Suite 3810
Houston, Texas 77010
margaret@mmmcclurelaw.com

Thomas H. Grace, Esq.
Vorys, Sater, Seymour and Pease L.L.P.
700 Louisiana Street, Suite 4100
Houston, Texas 77002
thgrace@vorys.com

*Attorneys for Debtor AmeriSciences, L.P.*

/s/ Seth A. Nichamoff
_____
Seth A. Nichamoff